IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

DEANDRE BEASON,

                      Petitioner,

v.

LOUIS WILLIAMS II,

                      Respondent.

OPINION & ORDER

17-cv-406-wmc
_____

Petitioner Deandre Beason, a federal prisoner incarcerated in this district at the Federal Correctional Institution in Oxford, Wisconsin, seeks a writ of habeas corpus under 28 U.S.C. § 2241. Beason seeks relief on the basis that his fifteen-year enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), was improper in light of the Supreme Court's decision in *United States v. Mathis*, 136 S. Ct. 2243 (2016), and the Seventh Circuit's decision in *United States v. Spencer*, 739 F.3d 1027 (7th Cir. 2014). The court directed the government to answer his petition, and the parties have fully briefed their positions. Having reviewed their positions, the court will deny Beason's petition, but will grant him a certificate of appealability.

BACKGROUND

**A. Beason's plea and sentence**

On September 15, 2009, a federal grand jury in the Eastern District of Wisconsin charged Beason with possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). *United States v. Beason*, No. 09-cr-186 (E.D. Wis.). Beason initially pled

1

guilty, and the court set the case for sentencing. The presentence report ("PSR") determined that Beason was subject to the fifteen-year enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), because he had three convictions that qualified as either violent felonies or serious drug offenses as defined by § 924(e)(2). Those predicate offenses were a Wisconsin juvenile adjudication for armed robbery in violation of Wis. Stat. § 943.32(2), and two Wisconsin drug offenses.

Seeking to oppose the ACCA enhancement, Beason was permitted to withdraw his plea agreement; he then entered into a modified plea agreement that permitted the parties to argue the applicability of the enhancement at sentencing. While Beason ultimately objected to the PSR, he did not challenge the inclusion of his juvenile robbery adjudication as a predicate offense. Instead, Beason argued that since one of his drug offenses, a Class G felony, carried a maximum penalty of ten years imprisonment -- not ten years or more as prescribed by § 924(e)(2) -- that conviction did not qualify as a predicate offense. On September 14, 2011, Judge Clevert rejected Beason's argument, concluded that the ACCA enhancement applied, and sentenced him to 180 months imprisonment.

B. Beason's direct appeal

While Beason pursued an appeal, his appointed appellate attorney ultimately filed an *Anders* brief, outlining Beason's desired arguments and explaining why each lacked merit. Among the issues Beason sought to raise were (1) a challenge to the inclusion of his juvenile adjudication as an ACCA predicate, and (2) a claim that his trial counsel was ineffective in failing to pursue that objection.

On July 23, 2012, the Seventh Circuit agreed with Beason's attorney and dismissed

2

the appeal, reasoning "error or not, an appellate claim would be frivolous because Beason did not object to the court's use of his juvenile adjudication" *United States v. Beason*, 493 F. App'x 747, 750 (7th Cir. 2002). However, in doing so, the court acknowledged the possible merit of that claim. In particular, the court recognized that "the ACCA counts only those acts of juvenile delinquency 'involving the use or carrying of a firearm, knife, or destructive device.'" *Id.* at 749. Then court further noted that while it had not considered how courts should analyze whether juvenile offenses "involved" those weapons,

> five other circuits have said that judges should use the same categorical approach applicable to adult convictions. *See United States v. Nevels,* 490 F.3d 800, 806–09 (10th Cir.2007); *United States v. Wells,* 473 F.3d 640, 646–50 (6th Cir.2007); *United States v. Kirkland,* 450 F.3d 804, 806–08 (8th Cir.2006); *United States v. Burge,* 407 F.3d 1183, 1187 (11th Cir.2005); *United States v. Richardson,* 313 F.3d 121, 123–28 (2d Cir.2003).
>
> In fact, however, these circuits have not limited juvenile offenses to those where the crime, if committed by an adult, would have as a statutory element the use of a gun, knife, or explosive. Instead, these circuits understand the "categorical approach" (or "modified categorical approach") to mean in this context that sentencing courts should look only to certain judicial records, *see Shepard v. United States,* 544 U.S. 13, 26, 125 S. Ct. 1254, 161 L.Ed.2d 205 (2005), in deciding if the juvenile offense was committed in a manner involving the use or carrying of a firearm, knife, or destructive device. *See, e.g., Burge,* 407 F.3d at 1187 (permitting district court to review charging document, terms of plea agreement, transcript of colloquy in which defendant confirmed factual basis for plea, or other comparable judicial record). If we followed that approach here, then the district court arguably committed error, since "armed" robbery can be committed under the Wisconsin statute without a gun, knife, or explosive, *see* Wis. Stat. § 943.32(2), and apparently the government offered none of the sources the court could use, consistently with *Shepard,* to decide if Beason's accomplice did in fact wield a firearm. (It does not matter that an accomplice rather than Beason was holding the gun. *See Nevels,* 490 F.3d at 808.).

*Id.* at 749-50. Nevertheless, the court concluded that it could not consider this issue unless Beason's trial counsel were found to have been ineffective in failing to object to the

3

district court's use of the juvenile adjudication, a question not normally cognizable on a direct appeal, but rather raised in a post-conviction motion under 28 U.S.C. § 2255. *Id.* (citing *Massaro v. United States*, 538 U.S. 500, 504-05 (2003) (claims of ineffective assistance of counsel are not cognizable on direct appeal because the appellate record lacks the necessary factual development for such a claim)).

**C. Beason's § 2255 motion**

Following the Seventh Circuit's suggestion, Beason filed a *pro se* motion under § 2255 on July 12, 2013, arguing that his trial attorney was ineffective for not objecting to the use of the juvenile adjudication to enhance his sentence under the ACCA, arguing in particular that "[u]nder Wisconsin statute § 943.32(2) armed robbery can be committed without a gun, knife, or explosive; thus, the statute criminalizes conduct that does not fall within the ACCA's definition of violent felony…" *Beason v. United States*, No. 13-cv-786, dkt. #2, at 20 (E.D. Wis.) Beason also echoed the Seventh Circuit's analysis, arguing that if his counsel had challenged the juvenile conviction, the court "would have taken a categorical approach or a modified categorical approach, rather than taking no approach at all," citing *Shepard*, as well as *Taylor v. United States*, 495 U.S. 575, 602 (1990), in which the United States Supreme Court established the categorical approach. *Id*. (dkt. #2) at 19.

On February 18, 2015, the district court denied the motion, concluding that Beason's counsel was not constitutionally deficient because, at the time the judge was deciding the § 2255 motion, Seventh Circuit precedent suggested that: (1) the modified categorical approach was appropriate; and (2) the charging documents related to Beason's

juvenile adjudication showed that he possessed a gun at the time of the offense. *Id.* (dkt. #16) at 6-7.

In reaching this conclusion, Judge Clevert reviewed the relevant case law for employment of the modified categorial approach, beginning with *United States v. Woods*, 576 F.3d 400 (7th Cir. 2009), in which the Seventh Circuit concluded that the modified categorical approach only applies when a statute is divisible -- that is, when the statutory language punishes some conduct that would qualify as a "violent felony" and some conduct that would not. Consistent with that case, Judge Clevert noted the sentencing court was authorized to consult additional materials to determine under which portion of the statute a defendant was convicted. *Beason*, No. 13-cv-786 (dkt. #16) at 5 (citing *Woods*). Judge Clevert further recognized that while Beason's § 2255 motion was pending, the United States Supreme Court adopted a similar divisible/indivisible distinction in *Descamps v. United States*, 133 S. Ct. 2276 (2013):

> The court held that where there are alternative paths with different elements to reach a conviction, the court may use the "modified categorial approach" to determine whether the offense qualifies as one of the "generic" violent felonies listed in 18 U.S.C. § 924(e)(2)(B)(ii) for purposes of the ACCA, 18 U.S.C. § 924(e). *Id.* at 2281. ... On the other hand, the court must use the "categorical approach" where the criminal statute is not divisible inasmuch as it contains a single set of elements without alternative ways to reach a conviction. *Id.* at 2282.

*Beason*, No. 13-cv-786 (dkt. #16) at 6.

Still, Judge Clevert neither evaluated whether the applicable Wisconsin statutes were indivisible or divisible, nor whether Wisconsin's definition of dangerous weapon was overly broad. Instead, he turned directly to the Seventh Circuit's dicta in its decision

resolving Beason's appeal, noting that each decision cited by the Seventh Circuit used the modified categorical approach and "relied on the juvenile delinquency petitions in reaching their decisions." *Id.* at 7. Adopting that framework, Judge Clevert referenced the PSR's description of Beason's juvenile adjudication to conclude that it qualified as a violent felony. *Id.* at 7. While he denied Beason relief on that basis, Judge Clevert also granted him a certificate of appealability because:

> the Seventh Circuit flagged the issue regarding Beason's juvenile adjudication on direct appeal and has admittedly not considered how sentencing courts should analyze whether juvenile crimes "involved" a firearm, knife, or destructive device. In other words, reasonable jurists could debate the application of the categorical or modified categorical approach to a juvenile adjudication and the use of the delinquency petition -- to which the defendant pled -- in applying the ACCA.

*Id.* (dkt. #16) at 8.

Despite Judge Clevert's certification, however, Beason did not appeal. Instead, Judge Clevert's order and judgment mailed to Beason were returned to the clerk's office as "undeliverable." The record does not indicate that Beason took any steps to follow up on his petition or to attempt to reopen his time for filing a notice of appeal.

OPINION

Beason seeks relief on two grounds. First, he argues that his juvenile adjudication is not an ACCA predicate offense based on the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016). Second, he argues that neither of his prior drug offenses carried a maximum term of imprisonment of 10 years or more, so they should not have been categorized as "serious drug offenses" under § 924(e)(2)(A)(1), *see United States v. Spencer*, 739 F.3d 1027 (7th Cir. 2014). The government concedes the merit of both

6

arguments, but insists that Beason is not entitled to relief under § 2241 because his claim does not fall under § 2255's savings clause. Unfortunately, the government appears to be correct.

I.  **Section 2255's Savings Clause**

A federal prisoner challenging his federal conviction or sentence must do so on direct appeal by filing a motion under 28 U.S.C. § 2255 in the district where he was convicted. *Unthank v. Jett*, 549 F.3d 534, 534-35 (7th Cir. 2008); *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). If a prisoner has already filed a § 2255 motion, he can pursue relief under § 2241 only if he can satisfy the mandates of § 2255's so-called "savings clause," 28 U.S.C. § 2255(e). The savings clause requires a prisoner filing a habeas corpus petition under § 2241 to show that "the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of his detention." *Kramer*, 347 F.3d at 217; *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002). More specifically, a prisoner seeking relief under the savings clause must show three things: (1) he is relying on a new case involving statutory-interpretation, rather than a new constitutional interpretation; (2) he is relying on a retroactive decision that he could not have invoked in his first § 2255 motion; and (3) "[the] sentence enhancement [must] have been a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding." *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013) (citations omitted) (internal quotation marks omitted); *see also Light v. Caraway*, 761 F.3d 809, 812-13 (7th Cir. 2014); *Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012); *United States v. Prevatte*, 300 F.3d 792, 799-800 (7th Cir. 2002); *In re Davenport*, 147 F.3d 605, 610-11 (7th Cir. 1998).

The government insists that Beason's petition fails the second requirement because both of his grounds for relief were available during the pendency of his original § 2255 motion. At the outset, although the Seventh Circuit has evaluated this "prior unavailability" requirement under arguably differing levels of scrutiny in the past,[1] that court provided greater clarity in *Montana v. Cross*, 829 F.3d 775, 784 (7th Cir. 2016). After acknowledging that the Seventh Circuit had previously applied "various formulations," the *Montana* court specified that "the second prong is satisfied if it would have been futile to raise a claim in the petitioner's original section 2255 motion, as the law was squarely against him." *Id.* at 784 (citing *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) (en banc)). With that standard in mind, this court must determine whether the law at the time of Beason's direct appeal and § 2255 proceeding foreclosed his challenges to the inclusion of either his juvenile adjudication or his drug convictions for purposes of a sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1).

### A. Juvenile adjudication for armed robbery

In *Mathis*, the Supreme Court held that a prior conviction counts as a predicate crime under the ACCA only "if its elements are the same as, or narrower than, those of the

---

[1] For example, in 2012, the Seventh Circuit applied a temporal test to conclude that a petitioner could not have invoked his claim earlier because the Supreme Court case on which it was based had not been decided by the time petitioner submitted his first § 2255 petition. *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). In other contexts, the Seventh Circuit applied a more restrictive approach, requiring the petitioner to show that his claim was actually *foreclosed* by binding precedent at the time of his direct appeal and first § 2255 motion. *Brown*, 719 F.3d at 595; *Davenport*, 147 F.3d at 610; *Light*, 761 F.3d 809 (petitioner's argument challenging an ACCA predicate was foreclosed by circuit precedent at the time petitioner pursued § 2255 motion).

generic offense." 136 S. Ct. at 2248. Beason argues that his juvenile adjudication for armed robbery cannot be categorized as a violent felony because the Wisconsin armed robbery statute requires "use or threat of use of a dangerous weapon," *see* Wis. Stat. § 943.32(2), and Wisconsin's definition of "dangerous weapon" includes more behavior than that which the ACCA defines as a qualifying juvenile adjudication.

On this point, the government agrees that Beason may well be correct. The ACCA defines qualifying juvenile adjudications as acts of delinquency "involving the use or carrying of a firearm, knife, or destructive device." 18 U.S.C. § 924(e)(2)(B). In contrast, Wisconsin's definition of dangerous weapon is arguably broader: including "any firearm, whether loaded or unloaded; any device designed as a weapon and capable of producing death or great bodily harm … or any other device or instrumentality which, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Wis. Stat. § 939.22(10). The question before the court, however, is not whether Beason's *Mathis* claim is meritorious, but whether the law was "squarely against" the assertion of his *Mathis*-like argument at the time of his first § 2255 petition. A reasonable reading of both *Descamps* and *Mathis* shows that it was not.[2]

In *Descamps*, the Supreme Court addressed California's burglary statute, concluding that it is indivisible and sweeps more broadly than the ACCA's generic definition of

---

[2] Borrowing from the § 2254 concept, Beason argues that his § 2255 arguments were enough to "fairly present" the principles of *Descamps*. However, Beason cites no authority for importing § 2254 procedural default rules into the § 2255 context, nor does he explain how Beason's arguments on the merits impact the court's savings clause analysis. To the extent Beason's merits-based arguments are relevant, they tend to support the government's position that the law was not "squarely against" Beason when he initially pursued relief under § 2255.

9

burglary because California does not require the actual entry to have been unlawful. 570 U.S. 254, 259 (2013). Reiterating that the ACCA's enhancement can only be based on what a jury had to "necessarily" find to convict a defendant, *id.* at 262, the Court went on to explain, albeit in a footnote, that a jury need not find a "non-elemental fact -- that is, a fact that by definition is *not* necessary to support a conviction." *Id.* at 266 n.3. This language certainly gave Beason an opening to challenge the inclusion of his juvenile adjudication as an ACCA predicate because the various types of objects that may qualify as "dangerous weapons" may have rendered the Wisconsin definition of juvenile adjudications for armed robbery overbroad. While Beason insists that *Descamps* "left ambiguity about when a statute is divisible" (Reply Br. (dkt. #13), at 8), he cites no decisions supporting that proposition, much less explaining why that ambiguity *foreclosed* him from asserting his challenge.

In any event, in *Mathis*, the Supreme Court reaffirmed the *Descamps* approach in holding that Iowa's burglary statute was broader than the ACCA's generic definition of burglary. Specifically, the Court repeated that the modified categorical approach permits examination of state court documents related to the charges *only* to determine which offense a defendant was charged under a multi-offense, or divisible, statute. 136 S. Ct. at 2253. The Court further emphasized that the sentencing court's threshold inquiry is to determine whether a statute with alternatives or listed items are elements or means:

> If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime. *See ibid.* But if instead they are means, the court has no call to decide which of the

statutory alternatives was at issue in the earlier prosecution. *Id.* at 2256. Certainly, the *Mathis* decision took greater pains to distinguish elements from means, but Justice Kagan explicitly rejected any suggestion that the Court's prior decisions were unclear with respect to the "elements only approach": "*Descamps* made clear that when the Court had earlier said (and said and said) 'elements,' it means just that and nothing else." *Mathis*, 136 S. Ct. at 2255. Therefore, Beason's suggestion that *Descamps* did not provide a basis for his overbreadth argument is unpersuasive.

The result is the same as to Beason's next point, in which he argues that binding Seventh Circuit precedent in *Woods* foreclosed his claim between 2013 and 2015 when his first § 2255 was pending. As an initial matter, *Woods* was decided in 2009, while *Descamps* was decided in 2013, a fact that Judge Clevert noted in his opinion. Beason does not explain how circuit court precedent would somehow foreclose seeking relief based on a subsequent Supreme Court decision. In any event, the Seventh Circuit's decision in *Woods* did not definitively resolve whether the modified categorical approach was appropriate for analyzing the inclusion of juvenile adjudications. To the contrary, the Seventh Circuit's own commentary in Beason's direct appeal, which was issued *before* the Supreme Court reiterated the elements-only approach in *Descamps*, suggested that it might resolve the question presented by Beason differently on a more developed record, reviewing the question *de novo*.

Instead of citing any authority to the contrary, Beason implies that his argument was foreclosed because Judge Clevert *erroneously* applied the modified categorical approach when he denied the original § 2255 petition, but "a claim of error in addressing the sort of

11

constitutional theory that has long been appropriate for collateral review does not render § 2255 'inadequate or ineffective.'"[3] *Taylor v. Gilkey*, 314 F.3d 832, 834-35 (7th Cir. 2002) ("Judges sometimes err, but this does not show that the procedures are inadequate; it shows only that people are fallible."); *see Ojeda v. Williams*, 734 F. App'x 370, 372 (7th Cir. 2018) (petitioner could not proceed under the savings clause because the argument, even if "impractical," was available at the time of direct appeal and in fact was rejected in a subsequent § 2255 motion).[4] Accordingly, Beason's petition fails under the second element of the savings clause of § 2255(e), and the court cannot grant him relief on his claim that his juvenile adjudication should not have been counted as a predicate act under the ACCA.

## B. Wisconsin drug offenses

Beason also challenges the inclusion of his Wisconsin drug offenses as predicate convictions. Under § 924(c)(2)(A), a drug offense qualifies as an ACCA predicate if it carries a maximum penalty of ten years or more. Beason explains that his drug offenses

---

[3] Judge Clevert's denial of Beason's § 2255 was not so precise. The starting point of his analysis was that the law regarding how courts should analyze juvenile adjudications for purposes of ACCA enhancements was actually unresolved. Although Judge Clevert cited to both *Woods* and *Descamps*, he did not, as Beason suggests, make a divisibility finding, and instead followed the line of cases cited by the Seventh Circuit and jumped right to the modified categorical approach.

[4] While Beason's failure to appeal his original § 2255 does not bear directly on the outcome of this case, had he done so, the parties may have developed the divisibility argument with more precision, and with a result in Beason's favor. Whether or not Beason would have received an order granting his § 2255 motion, Beason appears to have taken *no* steps to follow up with the court to obtain it. Furthermore, even if Beason could have been excused from missing his window to file a notice of appeal despite failing to apprise the court when his address changed, or to follow up with the court to inquire as to the status of his pending petition, nothing in the record suggests that Beason could not have sought to reopen his time to file a notice of appeal for good cause under Federal Rule of Appellate Procedure 4(a)(6).

constituted Class F and Class G felonies, respectively, and the Seventh Circuit previously held that a Class F felony can only result in 7.5 years of imprisonment under Wis. Stat. § 973.01. *United States v. Spencer,* 739 F.3d 1027 (7th Cir. 2014). Beason similarly points out the *Spencer* decision means that a Class G felony can only result in a sentence of 5 years of imprisonment in Wisconsin. However, the government again argues that Beason could have made this very argument in a supplemental pleading in his § 2255 proceeding because *Spencer* was decided while his first § 2255 petition was still pending.

In response, Beason argues that the government waived this argument in another similar case, *Hicks v. Stancil,* 642 F. App'x 620 (7th Cir. 2016). The government replies that *Hicks* is distinguishable because that petitioner's § 2255 proceeding had concluded *before* the Seventh Circuit decided *Spencer*. Beason disagrees, arguing that he could not have "supplemented" his petition to include an argument under *Spencer* unless Judge Clevert granted a request to amend the petition. As Beason sees it, to raise that argument, his original petition would have had to at least included a *Spencer*-type challenge for relation-back purposes. Even assuming this is so, and Beason cites no authority in support, Beason's position plainly falters since he neither explains why a *Spencer*-type challenge to the inclusion of his drug offense would have failed in 2013 even at the time he filed his first petition, nor cites any authority suggesting that he was "actually foreclosed" from arguing that his drug offenses should not have counted as ACCA predicate offenses until *Spencer*. Accordingly, like his *Mathis* claim, circuit precedent did not foreclose Beason from challenging the inclusion of his two drug offenses as ACCA predicates in his original § 2255 motion.

## IV. Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases (which can be applied to cases under § 2241 as well), the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. The question is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because Beason has raised well-reasoned arguments related to the state of the law when he was pursuing his first § 2255 petition, if ultimately unsuccessful, the court will grant him a certificate of appealability.

## ORDER

IT IS ORDERED that

1. Petitioner Deandre Beason's amended petition for a writ of habeas corpus (dkt. #5) is DENIED.
2. A certificate of appealability is GRANTED.

Entered this 29th day of November, 2018.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge